HAZEL M. HANDSAKER, Appellant, v. THOMAS L. HANDSAKER, Appellee.

No. 43643.

APRIL 6, 1937.

 

J. B. Newman, for appellant.

C. A. Smedal, for appellee.

STIGER, J.—The plaintiff obtained a divorce from the defendant in 1930. Prior to the decree of divorce, they entered into the following stipulation for custody of the children and alimony:

"It is agreed that the question of alimony in the above entitled case shall be and is hereby settled upon the following terms and conditions, to wit:

"First. That the plaintiff is to have the legal care and custody of the three minor children and is to be provided with a home in Cedar Falls, Iowa, said home to be purchased by the defendant upon such terms as he may be able to arrange for and the plaintiff and the said children are to have the free use and occupancy of the same, the defendant to pay the taxes on the property and the insurance.

"Second. The property referred to is to be a suitable one, the selection of the same to be made hereafter by the mutual agreement of the plaintiff and the defendant. That the plaintiff agrees to relieve the defendant from any further responsibilities in connection with the support of the family. That the defendant further agrees to pay the costs of the divorce proceedings."

The decree of divorce contains the following provisions in regard to the stipulation:

"The court further finds that the plaintiff has sustained the allegations of her petition and that prior to the granting of this decree that the plaintiff and defendant had entered into a certain stipulation relative to the matter of alimony, which stipulation is approved by the court, but the court retains jurisdiction in the matter of alimony until the defendant has fulfilled all of the provisions of the stipulation."

In the last paragraph of the decree the court states:

"It is further ordered, adjudged and decreed that the stipulation made between the parties with reference to the alimony in

this case is approved by the court, but the court expressly holds jurisdiction in this matter pending the fulfillment of the stipulation by the defendant and that if the defendant fails to fulfill his obligations under the stipulation to the satisfaction of the plaintiff, then this matter shall be re-opened on the question of permanent alimony, the court retaining jurisdiction as to alimony.''

In September 1935, the plaintiff filed a supplemental petition for modification of the decree alleging that her oldest child is now 17 years of age, the second child 15 years of age and the youngest child 8 years of age; that when the divorce was granted the defendant was insolvent but has since inherited real and personal property worth approximately $30,000; that the defendant refused and neglected to make necessary repairs on the dwelling house and permitted it to go unpainted and remain out of repair until the present season when defendant partially painted the house and made minor repairs but that said property is now in a bad state of repair and will soon become uninhabitable. The petition further alleges that the plaintiff has worked hard and unremittingly to provide a living for her children, bought their clothing and afforded them school facilities to the best of her ability, out of her personal earnings; that her earnings were not sufficient to provide said children with the comforts and schooling they should have; that as the children have grown older, the expense of their care and maintenance has increased beyond the ability to provide therefor, the plaintiff and children having no property of their own; that defendant has not aided in any way in the care, maintenance and schooling of the children since the divorce and has failed to fulfill his obligations under the decree to the satisfaction of the plaintiff. The plaintiff prayed that she be awarded the sum of $10,000 as permanent alimony and the further sum of $20 a month for the care, support and maintenance of each of the children until they become of age and that judgment be rendered therefor and declared a lien on the real estate of the defendant and that a writ of attachment issue to assist in the enforcing of the decree.

The defendant filed an answer to the petition alleging substantial performance in good faith of all of the terms of the decree and that he has caused the dwelling house provided for the plaintiff and children to be kept in a good state of repair. The

answer further alleges that the divorce decree provided that the court would retain jurisdiction "in the matter of alimony until the defendant has fulfilled all of the provisions of the stipulation"; that in conformity with the terms of said stipulation he secured a certain dwelling house in the city of Cedar Falls, Iowa, to be used as the home of the plaintiff and the minor children, the selection of the home being submitted to the plaintiff for approval, and the plaintiff approved the home purchased for her by the defendant; that the plaintiff went into the possession and occupancy thereof and has continuously resided therein and the defendant has at all times maintained the home in a suitable and reasonable condition for habitation, has paid for and discharged all taxes levied and assessed against the property, and the defendant having fully complied in good faith with all of the provisions of the stipulation, the court is now without jurisdiction to modify the original decree.

The court found that the defendant secured and obtained title to a certain residence property in Cedar Falls, Iowa, in compliance with the stipulation and that the defendant at all times had permitted the plaintiff and children the free use and occupancy of the dwelling and paid the taxes. The court further found that the plaintiff was not entitled to any modification of the decree with reference to alimony for herself, especially because of the decree and stipulation as to alimony and that she was not entitled to attorney's fees for services rendered on her application for modification.

The court further found with respect to the application for modification for the maintenance of the children that the defendant should be required to convey the fee title to the premises to the three minor children jointly, the conveyance to provide that the property could not be sold, encumbered or otherwise alienated until the youngest child attained her majority and that the plaintiff have the free use and occupancy of the premises as long as she may live; that the defendant should pay the taxes due in 1936 and thereafter should be released from the payment of taxes and assessments that might be levied against the property and from the up-keep and repair of the premises. The court further found that the defendant should pay to the clerk of the court for the use and benefit of the minor children the sum of $800 which should be withdrawn from time to time in whole or in part only upon application made to and upon proper order

of the court. The court further found and decreed that upon the payment of the taxes payable in 1936, the delivery of deed of conveyance and the payment to the clerk of the sum of $800 and costs of the action, that the writ of attachment stand dissolved. A decree was entered in harmony with the finding of the court. The plaintiff appealed.

The allegation of the plaintiff that the defendant failed to comply with the provisions of the stipulation and decree are not sustained by the evidence. We find that the defendant in good faith substantially performed all of the provisions of the stipulation.

The first question submitted is whether the original decree provided for alimony for the plaintiff.

The appellee contends that the decree of divorce denied plaintiff alimony or was silent as to alimony and therefore cannot be modified so as to provide for alimony.

■■■ It is well settled in this state that if alimony is denied it is an adjudication binding on the parties and the decree cannot thereafter be modified to provide for alimony even though there is a substantial, material change in the circumstances of the parties, financial or otherwise. This rule, and the reasons for the rule, are clearly stated in the case of Spain v. Spain, 177 Iowa 249, 158 N. W. 529, L. R. A. 1917D, 319, Ann. Cas. 1918E, 1225. See, also, Paul v. Paul, 217 Iowa 977, 252 N. W. 114; Duvall v. Duvall, 215 Iowa 24, 244 N. W. 718.

■■■ While the decree is not as clear and definite on the question submitted as it should be, we conclude that it does make some provision for maintenance of the plaintiff and therefore the rule invoked by appellee is not applicable.

Code section 10481 provides that:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. Subsequent changes may be made by it in these respects when circumstances render them expedient."

In the recent case of Goldsberry v. Goldsberry, 217 Iowa 750, 755, 252 N. W. 531, 533, the court states:

" 'It has always been held that the original decree is conclusive upon the parties as to the then circumstances of the par-

ties, and the power to grant a modification in the decree is not a power to grant a new trial, or retry the same issues, but only to adapt the decree to the changed conditions of the parties.' ''

We will turn to the record for the purpose of determining subsequent material changes in the condition of the parties.

When the plaintiff obtained her decree of divorce, the defendant was insolvent. The defendant complied with the stipulation and provided her a comfortable home approved by her which was purchased with funds borrowed from his father in the amount of $3,000, which was charged against the defendant's interest in his father's estate. The plaintiff agreed in the stipulation to relieve defendant from further responsibility in connection with the support of the family, and burdened herself with the custody of the children knowing it would be necessary to seek gainful employment and has supported herself and children since the divorce. She obtained employment in the Cedar Falls post office and her income from all sources has been about $70 per month. Her father and mother lived with her and the children until the father's death, the mother still residing with her. Since 1934, plaintiff's sister-in-law and daughter have also occupied the home provided by the defendant. Plaintiff testified that she was not able, with the wages she earned, to support, clothe and feed and provide school facilities for the girls but admitted she had maintained the children in the public schools of Cedar Falls, Iowa, at all times.

On cross-examination, the plaintiff testified with regard to the public schools that "the school is open to them and they are in attendance at that school, and when I say I am not able to give them the education they are entitled to, I mean schooling after they graduate. Juanita and Lucille are juniors. There are no plans about their education beyond the Cedar Falls School.''

■■■ That the cost of supporting and maintaining the children would increase as they grew older, was, of course, known and contemplated by the plaintiff at the time she obtained their custody and relieved the defendant of all further obligations in connection with the support of the family. The plaintiff admits there is no present plan for higher education for the children and it is very doubtful, were the plaintiff and defendant and the children now living together, that they would be able to provide

college education for the children. We find no material changes in the circumstances of the plaintiff not reasonably contemplated at the time of the decree.

 Sometime after the divorce, the defendant inherited 160 acres situated in Story county from his father valued at from $135 to $150 per acre and there is about $1,500 still due him from the personal property belonging to the estate. Through the inheritance, there was a change in the financial condition of the defendant which warranted the trial court in entertaining the petition for a modification of the decree. As above stated, the defendant was insolvent when the divorce was granted. The purchase price of the dwelling house furnished plaintiff and the children was $3,150 of which sum the defendant paid $150. The executor of the father's estate has paid the sum of $2,469.37 on the purchase price and charged this amount against the defendant's interest in the estate. There is still due on the purchase price the sum of $590 which will be paid by the executor and charged to the defendant. Since 1930, the defendant has paid in taxes and repairs, etc., on the house over $1,100, making the total amount paid out by defendant $4,271.31. The defendant has tendered the $800 required by the court to be paid for the benefit of the children and deed and abstract to the Cedar Falls residence, so the defendant will have paid out for his wife and children over $5,000.

The net income from the farm inherited from his father in 1934 and 1935 was about $1,000. The defendant earned from painting and odd jobs in 1931, about $350; in 1932 he earned around $600; in 1933, $180 and in 1934, $37.88. The record shows that in March, 1931, the defendant borrowed $550 and in 1933 he borrowed $800. There is a mortgage of $900 on his home in Ames, Iowa.

Since the divorce, the defendant has remarried and has one child from this marriage. The defendant has become afflicted by a disease called coldagia, which is caused by exposure to cold or drinking cold drinks. Exposure to cold causes a swelling of the part exposed and the systemic effect is headache, dizziness, and shortness of breath followed by low blood pressure and rapid pulse. An exposure to cold for any length of time might be fatal. The effect of exposure to cold lasts about 24 hours and the symptoms recur after each exposure. The defendant's occupation before his health became affected was principally that of a farmer.

He is compelled to rent the farm and his earning powers are apparently decreasing. A large part or all of the $5,000 spent for his wife and children must have been from his inheritance, that is, the plaintiff and her children have had the benefit of substantially the sum of $5,000 from the property inherited by the defendant. It appears that the defendant has other debts than the balance due on the purchase price of the home.

Under the original decree the defendant retained title to the Cedar-Falls property and the plaintiff and children only had the right to the free use and occupancy of the home, defendant to pay taxes and insurance.

The trial court recognized defendant's natural obligation to his children and that his ability to pay had increased through his inheritance and compelled him to convey the fee title to the children, gave the plaintiff the right to occupy the home, and further required him to pay $800 for the use and benefit of the minor children. He denied plaintiff's demand that the defendant pay her the sum of $10,000 and refused additional direct alimony.

Plaintiff claims that she is in a worse condition under the modification of the decree than under the decree. We cannot agree with the plaintiff. The $800 will be disbursed under order of court from time to time for the welfare of the children and will doubtless be used for the payment of taxes and repairs on the house and relieve the plaintiff from some of the burden she has had in rearing and supporting the children. The only way defendant could pay any substantial sum to the plaintiff would be from the sale or mortgage of the property inherited which is now his main source of support and because of the condition of defendant's health may become his sole source of maintenance.

Though the original decree provides for alimony for the divorced wife, this court will exercise its power to increase alimony only under unusual circumstances. Paul v. Paul, 217 Iowa 977, 252 N. W. 114; Barish v. Barish, 190 Iowa 493, 180 N. W. 724; Ostheimer v. Ostheimer, 125 Iowa 523, 525, 101 N. W. 275, 276.

In the Ostheimer case we stated:

"Upon the general proposition argued by counsel as to the power of the court to grant new and additional alimony to a divorced wife after a final decree fixing the amount of such relief,

we have to say that, whatever may be the extent of such power, the courts will be slow to exercise it, save in cases where, by reason of changes which could not reasonably have been anticipated in the relative circumstances of the parties, the propriety and equity of the demand are established beyond reasonable question.''

For the last four or five years plaintiff has had employment in the Cedar Falls post office and her income is approximately $70 per month. Her earning power is unimpaired. The defendant has remarried and his earning power is impaired.

While we have held that remarriage with its obligations does not alone constitute a ground for a reduction of alimony, we think, in adjusting the equities between parties in a case of this kind that the remarriage of the party obligated to pay alimony may be taken into consideration by the court. Bearing somewhat on this question is the following statement of the court in Newburn v. Newburn, 210 Iowa 639, 642, 231 N. W. 389, 391:

''His right to remarry is not questioned, nor are the rights and necessities of the new family to be minimized. Perhaps a case might arise in which the facts and circumstances shown in favor of the husband against whom a judgment for alimony exists, would make proper a consideration of his remarriage, in the adjustment of equities on an application to modify the decree.''

The plaintiff failed to establish the propriety and equity of her demand for additional alimony.

Under the record here presented, we conclude the trial court made a fair and equitable modification of the decree and we fully concur in the findings and decree of the trial court.

 The court was right in holding that plaintiff was not entitled to attorney fees for services rendered in the hearing on the petition for modification of the original decree. Duvall v. Duvall, 215 Iowa 24, 244 N. W. 718.

It follows that the cause must be and is affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, DONEGAN, SAGER, KINTZINGER, HAMILTON, PARSONS, and MITCHELL, JJ., concur.