AUDRIA A. WASSER, appellee, v. CARL J. WASSER, appellant.

No. 49457.

(Reported in 90 N.W.2d 431)

JUNE 3, 1958.

Ted Sloan and Don Hise, both of Des Moines, for appellant.

Holliday, Miller, Myers & Stewart, by Gibson C. Holliday, and William Wimer, all of Des Moines, for appellee.

OLIVER, J.—This is an appeal from an order and judgment denying the application of defendant (divorced husband) for the termination of the provision of the divorce decree that he pay $150 per month alimony. The parties married in 1924. In June 1951 plaintiff-wife secured an uncontested divorce. The part of the decree fixing alimony, etc., adopted a stipulation of the parties. It awarded plaintiff the home, household goods, $750 in cash, and alimony in the amount of $150 per month. Defendant was awarded the family automobile, some War Savings Bonds and a small amount of the capital stock of the company for which he worked. Defendant was required to pay $25 per month for the support of the minor daughter of the parties, of whom plaintiff was given the care and custody. Thereafter this daughter married and that part of the decree became ineffective.

Soon after the divorce defendant entered into another marriage and subsequently adopted the young son of his second wife. His first application to terminate the alimony provisions of the divorce decree was denied in June 1953. The second application, here on appeal, was denied September 30, 1957. Defendant was then fifty-one years of age and plaintiff was forty-nine or fifty.

As to the facts, there is little dispute. For many years defendant has worked as a salesman for the same corporation. His gross income for each year beginning with 1951 was between $7200 and $7700. His present wife has earned approximately $1500 per year beginning with 1954. Since the divorce defendant received $8000 by gift and inheritance from his father. He and his wife are buying a home on the monthly payment plan. Federal income taxes on their joint incomes have averaged about $1280 per year. Payment of federal and state income taxes left them net income of approximately $7800 per year out of which defendant has paid plaintiff $1800 per year, leaving approximately $6000 per year for the support of his present

family. Of this amount approximately $1200 is attributable to the earnings of defendant's present wife.

Plaintiff has no business training and apparently is not, and at the time of the divorce was not, physically able to undertake employment. She has suffered from rheumatism. The report of a doctor, dated December 19, 1952, recited she then complained of backache and nervousness, and gave a history of former back injuries, gall bladder removal in 1949, and pelvic surgery in 1945, together with radium treatments for cancer of the uterus. The report stated it was impossible to give a definite opinion without X-ray examination of the back. Diagnosis: (1) Obvious nervousness (2) possible arthritis of the spine (3) possible injury to the spine (4) possible metastasis of the cancer to the spine.

Since her divorce, plaintiff was hospitalized for twelve days in January 1956, by an accidental injury, from which she recovered. Her expenses on this account were more than $600. In 1956 she sold the home for $7300, paid these expenses and invested $5000 in bonds. Since then she has occupied a two-room apartment.

Defendant's application for modification of the divorce decree was made after the death of plaintiff's father in October 1956. The estimated gross value of his estate was $321,000, half of which was money deposited in banks. His will gave plaintiff a life estate in a 144-acre farm in Pottawattamie County, Iowa, of the value, estimated by a witness, of "upwards towards $200 an acre." Plaintiff's brief states, "she cannot expect to average in excess of $1000 per year as net income from the farm." The will also established a trust for the benefit of plaintiff and five other descendants of testator. It provided each beneficiary should be paid $2000 per year for ten years and that the remainder of the trust fund be distributed among the beneficiaries at the end of that period. The record does not show the amount of the trust fund, but, with normal earnings, it appears to be sufficient to pay the $12,000 per year for ten years and a substantial amount to each beneficiary when it terminates.

It is clear the annuity and the life estate in the farm constitute a material change in plaintiff's financial situation. See Handsaker v. Handsaker, 223 Iowa 462, 272 N.W. 609. There

is no merit in plaintiff's contention this was taken into account when the amount of alimony to be paid her was fixed in 1951. The order and judgment denying defendant's application to modify the original decree was based upon the conclusion the record did not establish such changed condition. This was erroneous.

Defendant's application was predicated upon the theory the benefits given plaintiff under the will are sufficient to justify the termination of the monthly payments of alimony awarded her. Although we do not agree with this we conclude the record shows such a material change in her circumstances as to make proper the reduction of such payments from $150 per month to $75 per month.

The record indicates plaintiff should receive from the trust fund $2000 per year for ten years, $1000 per year from the farm and approximately $150 per year interest on her bonds. Alimony of $75 per month added to this will give plaintiff an income of approximately $4000 per year, before income taxes.

Of course, if the assets of the trust prove inadequate to carry out its provisions and leave a substantial balance for each beneficiary, or if other material changes occur in the situation of either party, a re-examination of the alimony provisions of the divorce decree, as modified, may be had.

The order and judgment of the district court is modified by reducing the monthly payments of alimony from $150 to $75 beginning with the payment due in June 1958.

The cost of printing appellee's brief is ordered taxed to her, other costs on appeal are ordered taxed to appellant.—Modified.

All JUSTICES concur except SMITH, J., not sitting.