# IN THE COURT OF APPEALS OF IOWA

No. 17-2029
Filed December 19, 2018

IN RE THE MARRIAGE OF DANIEL DEAN BLIEK
AND LORI LEE BLIEK

Upon the Petition of
DANIEL DEAN BLIEK,
      Petitioner-Appellant,

And Concerning
LORI LEE BLIEK,
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Linn County, Fae E. Hoover-Grinde, Judge.

Daniel Bliek appeals from the district court's order granting Lori Bliek's petition to modify the spousal support provision of the parties' 2013 dissolution decree. **REVERSED.**

Mark D. Fisher of Nidey Erdahl Fisher Pilkington & Meier, PLC, Cedar Rapids, for appellant.

Kristen A. Shaffer of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Daniel and Lori Bliek divorced in 2013 after thirty-one years of marriage. The 2013 dissolution decree incorporated a stipulation under which Daniel agreed to pay Lori spousal support of $2100 per month for 138 months or the earlier of her sixty-second birthday, Lori's death, or her remarriage.

Two years and three months after the dissolution decree was filed, Lori petitioned to modify the child and spousal support awards. She alleged a "substantial and material change in circumstances, including but not limited to a change in income since support was calculated." *See* Iowa Code § 598.21C(1) (2016) (authorizing modification of support awards "when there is a substantial change in circumstances"). Following a hearing, the district court denied Lori's request to modify child support but granted her request to modify the spousal support award. The court found a substantial change of circumstances since the entry of the decree, warranting an increase in Daniel's spousal support obligation to $4100 per month for 138 months, retroactive to "three months after Daniel accepted service of the" modification petition. The court ordered Daniel to pay an additional $1000 per month until the accrued support was paid in full as well as $3000 toward Lori's trial attorney fees.

On appeal, Daniel contends, "In the less than three years between the original Decree and the modification trial, there simply were no substantial changes in circumstances." In responding to Lori's brief, he asserts, "one may come to the conclusion that this is an appeal of an original alimony award. It is not."

Daniel is correct in his characterization of the appeal. The dispositive question is whether circumstances substantially changed in the two plus years

between entry of the dissolution decree and filing of the modification petition. *See In re Marriage of Rietz*, 585 N.W.2d 226, 229 (Iowa 1998) (articulating standards for modification of support awards).

Preliminarily, it is worth noting that the fact Lori stipulated to the $2100 monthly support amount does not prevent her from seeking a modification of the award. *See Pedersen v. Pedersen*, 17 N.W.2d 520, 522 (Iowa 1945) (concluding stipulation "would not preclude modification of the decree" because the stipulation merged with the decree); *see also In re Marriage of Jacobo*, 526 N.W.2d 859, 862, 864 (Iowa 1995) (noting stipulation but finding substantial change of circumstances). As the Iowa Supreme Court stated: "[T]here are some rare situations where, notwithstanding an agreement and decree to the contrary, later occurrences are so extreme in their nature as to render the initial understanding grossly unfair and therefore subject to change." *In re Marriage of Wessels*, 542 N.W.2d 486, 489 (Iowa 1995), *as amended on denial of reh'g* (Dec. 14, 1995). These situations "will exist only when the subsequent changes demand that the original order cannot, in fairness and equity, continue to stand." *Id.* The subsequent changes in this case did not demand a modification.

Daniel had a bachelor of science degree and, throughout the dissolution and modification proceedings, worked for an avionics company in Cedar Rapids. At the time of the dissolution trial, he earned $155,000 annually and received a twelve percent incentive bonus most years.[1] At the time of the modification

---

[1] The last year he did not receive a bonus was 2009.

hearing, he was employed in the same position and earned base pay of $165,315 with an expected bonus of $20,036.

Lori was fifty-three years old. She completed one year of college and earned a paraprofessional certification. During the marriage, she served as primary caretaker of the parties' five children, working outside the home only thirty to forty hours a year. At the time of the modification hearing, she worked full-time as a student support associate for one of the local school districts, earning $12.57 per hour. She held another job in the summers, earning $17.00 per hour.

During the modification hearing, Lori testified she understood at the time of the dissolution proceedings that Daniel's income would increase. She also conceded the amount of the annual increases were within her expectation. *See Rietz*, 585 N.W.2d at 229 ("[T]he change in circumstances must not have been within the contemplation of the trial court when the original decree was entered."). She equivocated on her knowledge of Daniel's bonuses, but a financial affidavit she filed in 2013 listed his salary at $170,000, well over his base salary at the time. Notably, her stipulation to the $2100 spousal support figure was made in consultation with an attorney and a certified divorce financial analyst.

That analyst, who also served as a certified financial planner, testified at the modification hearing and advocated for an increase in spousal support. At the same time, she conceded Daniel's income during the original proceedings would have allowed him to pay more than the stipulated amount of spousal support and she agreed that increases in his base salary were all within reasonable contemplation. Although she testified Daniel's bonuses were not disclosed during

the dissolution proceedings and his receipt of them "was what was changed," she back-pedaled after being confronted with her 2013 report referencing his bonuses.

On our de novo review, we conclude changes in Daniel's income were not substantial and material and, in any event, were contemplated by the parties. We base our conclusion on Lori's concessions, the concessions of her expert, and the opinion of Daniel's expert that "there has not been a substantial change in Daniel's income between 2013 and 2016."

We turn to Lori's earning potential, a factor the district court found was "less than what was contemplated in the decree." While Lori's expert correctly reported a "stark contrast in earning[s]" between the parties, the contrast was known and considered at the time of the dissolution decree, when Lori reported annual income of $16,000.

We are left with Lori's post-dissolution living expenses, which the district court found could not be met without withdrawing retirement funds. Notably, an affidavit Lori filed at the time of the modification proceeding listed total expenses of $4932, slightly less than the expenses listed in an affidavit filed at the time of the dissolution proceeding. Although Lori reported increased expenses at the modification hearing, the increases do not reflect the "rare situation" warranting a modification of spousal support. *Cf. In re Marriage of Sisson*, 843 N.W.2d 866, 871-72 (Iowa 2014) ("The preponderance of the evidence in this case reveals [the spousal support recipient's] medical condition is a circumstance beyond the contemplation of the parties at the time of the dissolution of marriage, which will at some point in the future not only render her unable to work, but take her life."); *Wessels*, 542 N.W.2d at 489 (citing "onset of cancer" or drastic deterioration in

mental health as examples of rare situations); *In re Marriage of Carlson*, 338 N.W.2d 136, 141 (Iowa 1983) (affirming modification of spousal support following recipient's loss of home, theft of furniture, inability to secure stable employment, and need to live with her children).

On our de novo review, we conclude Lori failed to establish a substantial change of circumstances not contemplated at the time of the dissolution decree. Accordingly, we reverse the modification of her spousal support award. In light of our conclusion, we reverse the award of trial attorney fees and decline Lori's request for $8303 in appellate attorney fees.

**REVERSED.**